# United States Court of Appeals
## For the First Circuit

No. 13-2189

MERIT CONSTRUCTION ALLIANCE ET AL.,

Plaintiffs, Appellees,

v.

CITY OF QUINCY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Thompson and Selya, Circuit Judges,
and McConnell,* District Judge.

James S. Timmins, City Solicitor, for appellant.
Christopher N. Souris and Krakow & Souris, LLC on brief for New England Regional Council of Carpenters, amicus curiae.
Christopher C. Whitney, with whom Scott K. Pomeroy and Pierce Atwood LLP were on brief, for appellees.
Maurice Baskin and Littler Mendelson, P.C. on brief for Associated Builders and Contractors, Inc., amicus curiae.

July 16, 2014

---

*Of the District of Rhode Island, sitting by designation.

**SELYA, Circuit Judge.** This case presents not one, but two, questions of considerable import, each of which implicates the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461. The first concerns whether the reach of ERISA's preemption provision, 29 U.S.C. § 1144(a), extends to a municipal ordinance mandating the establishment of a specific type of apprentice training program. The second concerns the scope of ERISA's fee-shifting provision, 29 U.S.C. § 1132(g)(1). After careful consideration, we conclude that the district court answered the first question correctly, but not the second. Accordingly, we affirm in part, reverse in part, and remand for reconsideration of the fee award.

## I. BACKGROUND

In 2012, defendant-appellant City of Quincy (the City) solicited bids for a construction project at a middle school. Would-be bidders were required to certify compliance with the City's euphemistically named Responsible Employer Ordinance (the Ordinance). Pertinently, the Ordinance demands that bidders on municipal public works projects "engage[] in a bona fide apprentice training program" registered with the Massachusetts Department of Labor Standards. Quincy, Mass., Code § 15.26.010(C); see Mass. Gen. Laws ch. 23, §§ 11H, 11I (providing relevant definitions). The Ordinance further mandates that at least one apprentice have

-2-

graduated from the program in the twelve months immediately preceding the bid.  See Quincy, Mass., Code § 15.26.010(C).

This bidding condition brought with it a legal cloud; a federal district court had ruled that ERISA preempted a similar ordinance passed in Fall River, Massachusetts.  See Util. Contrs. Ass'n of New Eng., Inc. v. City of Fall River, No. 10-10994, 2011 WL 4710875, at *7 (D. Mass. Oct. 4, 2011).  Merit Construction Alliance (the Alliance), a trade association of construction companies, asked whether the City would continue to enforce its apprentice training requirement.  When the City responded affirmatively,[1] the Alliance, joined by two of its members (Grasseschi Plumbing & Heating, Inc. and D'Agostino Associates, Inc.), and a Grasseschi employee (David Ross), sued the City in the federal district court.  Among other things, the complaint sought injunctive and declaratory relief on the ground that ERISA preempted the Ordinance's apprentice training requirement.[2]

---

[1] The City's affirmative response indicated that it would suspend enforcement of the graduation requirement in connection with this bid solicitation.  Because of the limited nature of the suspension, we think that it is appropriate to include the graduation requirement in the overall preemption calculus.

[2] The plaintiffs initially challenged several other provisions of the Ordinance.  The City agreed not to enforce some of these provisions, and the litigation narrowed to focus on two provisions: the Ordinance's residency requirement and its apprentice training requirement.  Eventually, the City conceded the former issue and, thus, this appeal concerns only the latter.

-3-

The district court granted a preliminary injunction barring enforcement of the apprentice training requirement, based largely on its earlier decision in the Fall River case. See Merit Constr. All. v. City of Quincy (Merit I), No. 12-10458, 2012 WL 1357656, at *2, *4 (D. Mass. Apr. 18, 2012). Summary judgment in favor of the plaintiffs followed apace. See Merit Constr. All. v. City of Quincy (Merit II), No. 12-10458, 2013 WL 396123, at *3 (D. Mass. Feb. 1, 2013).

To the victor belong the spoils, and the next stage of the battle involved attorneys' fees. The district court granted the plaintiffs' motion for fees and awarded them the amount of $81,007.85. See Merit Constr. All. v. City of Quincy (Merit III), No. 12-10458, 2013 WL 3984596, at *3 (D. Mass. Aug. 2, 2013). The City unsuccessfully sought reconsideration of the fees order. See Merit Constr. All. v. City of Quincy (Merit IV), No. 12-10458, 2013 WL 4446935, at *3 (D. Mass. Aug. 21, 2013). This timely appeal followed.

## II. ANALYSIS

In this venue, the City for the first time questions the plaintiffs' standing to sue. Because this challenge implicates subject matter jurisdiction, we are obligated to address it despite its lateness. See Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp., LP, 362 F.3d 136, 138-39 (1st Cir. 2004) ("[I]t is firmly

-4-

settled that challenges to federal subject matter jurisdiction may be raised for the first time on appeal.").

The Constitution limits federal-court jurisdiction to actual cases and controversies. See U.S. Const. art. III, § 2. In line with this limitation, a litigant seeking to enlist federal court jurisdiction must demonstrate his standing to bring suit: he must have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues." Baker v. Carr, 369 U.S. 186, 204 (1962).

When an unincorporated association seeks to open the doors of a federal court, it must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977). For an individual to have standing, he must establish injury in fact, causation, and redressability. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

The first element of this triad inquires into the existence of "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Id. at 560 (internal quotation marks and citations omitted). The second element asks whether the

alleged injury is "fairly traceable to the challenged action of the defendant." Id. (internal quotation mark and alterations omitted). The third element asks whether it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 561 (internal quotation marks omitted).

The Alliance's members pass this tripartite test with flying colors. Among their ranks are contractors that neither maintain apprentice training programs nor satisfy the Ordinance's graduation quota. Those members suffer injury because they want to bid on public works projects in Quincy but are constrained from doing so by the strictures of the Ordinance. If the plaintiffs prevail, the Ordinance will be declared null and void, thus removing the injury-causing obstruction to their bidding eligibility.

Similarly, the Alliance meets the criteria for associational standing. At least some of its members have individual standing, and preserving its members' bidding capabilities closely relates to its raison d'être. To cinch matters, nothing about an ERISA preemption challenge calls for enlisting the participation of individual Alliance members. See Retail Indus. Leaders Ass'n v. Fielder, 475 F.3d 180, 187 (4th Cir. 2007).

The City, in effect, attempts to confess and avoid. It disputes none of the conclusions recounted above but, rather, tries

to graft a requirement of an ERISA-covered apprentice training program onto the test for constitutional standing.  This is pie in the sky: the City offers no authority for the proposition that the Constitution imposes any such requirement.

Of course, ERISA's statutory enforcement provision contemplates the existence of an ERISA plan.  See 29 U.S.C. § 1132(a)(3).  But the question of standing that the City raises here is constitutional in nature, and we see no reason that such a condition is necessary to render this action an actual case or controversy within the meaning of Article III.  See Wright Electric, Inc. v. Minn. State Bd. of Elec., 322 F.3d 1025, 1028-29 (8th Cir. 2003) (holding that plaintiff need not "show that its apprenticeship program was an ERISA plan in order to establish subject matter jurisdiction").  We therefore hold that the Alliance has standing to challenge the Ordinance on the ground of ERISA preemption.

Having determined that an actual case and controversy exists, we proceed to chew on the meat of the appeal: preemption and attorneys' fees.  We address these subjects sequentially.

## A.  Preemption.

The City assigns error to the district court's ruling that ERISA preempts the Ordinance's apprentice training requirement.  Since this ruling was made on summary judgment, our review is plenary.  See Geshke v. Crocs, Inc., 740 F.3d 74, 76 (1st

Cir. 2014); see also Carpenters Local Union No. 26 v. U.S. Fid. & Guar. Co., 215 F.3d 136, 139 (1st Cir. 2000).

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983). Enacted in part "to safeguard employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits," the statutory scheme "sets forth reporting and disclosure obligations for plans, imposes a fiduciary standard of care for plan administrators, and establishes schedules for the vesting and accrual of pension benefits." Massachusetts v. Morash, 490 U.S. 107, 112-13 (1989).

When considering a claim of preemption, "our task is to ascertain Congress' intent in enacting the federal statute at issue." Shaw, 463 U.S. at 95. With respect to ERISA, this intent is express, if somewhat "opaque." De Buono v. NYSA-ILA Med. & Clinical Servs. Fund, 520 U.S. 806, 809 (1997). By its terms and subject to exemptions not relevant here, ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).

The Supreme Court has distilled the statute's "relate to" language into two independently sufficient alternatives: "a connection with or reference to" an ERISA plan will result in preemption. Shaw, 463 U.S. at 97. Under this two-sided rubric,

ERISA's preemptive reach "is clearly expansive." N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995). But the Court has nevertheless cautioned against "an uncritical literalism" in applying this test, warning that "infinite connections" cannot supply the measure of preemption. Id. at 656. Thus, we must consider "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." Id. In the process, we must remain mindful that ERISA was not intended to supersede the state's historic police powers unless such supersession "was the clear and manifest purpose of Congress." Id. at 655 (internal quotation mark omitted).

The battle here, as waged by the parties, focuses on the "connection with" component of the two-sided ERISA preemption calculus. The district court concluded that the Ordinance's requirement that "every bidder . . . have an apprenticeship program meeting Massachusetts standards" supplied the requisite connection. Merit II, 2013 WL 396123, at *2. We share this view.

To begin, it is important to note that programs "established or . . . maintained for the purpose of providing . . . apprenticeship or other training" qualify as ERISA employee welfare benefit plans. 29 U.S.C. § 1002(1). Thus, ERISA will preempt the Ordinance's operation if and to the extent that the Ordinance bears a sufficient connection to such programs.

Of course, not every conceivable connection will support preemption. For example, state laws that merely exert an "indirect economic influence" on a plan do "not bind plan administrators to any particular choice" and, thus, do not come within ERISA's preemptive reach. Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., Inc., 519 U.S. 316, 329 (1997) (internal quotation marks omitted). On the other hand, "state statutes that 'mandate[] employee benefit structures or their administration' . . . amount[] to 'connection[s] with' ERISA plans" and are therefore preempted. Id. at 328 (final alteration in original) (quoting Travelers, 514 U.S. at 658).

The path from influence to coercion amounts to a continuum and it is not always a simple task to determine where along this continuum a particular state law falls. See Travelers, 514 U.S. at 668; see also Samuel C. Salganik, Note, What the Unconstitutional Conditions Doctrine Can Teach Us About ERISA Preemption: Is It Possible To Consistently Identify "Coercive" Pay-or-Play Schemes?, 109 Colum. L. Rev. 1482, 1515-19 (2009). This case, however, does not greatly tax our capacity for discernment: the Ordinance categorically requires all contractors on Quincy public works projects to operate a Massachusetts-approved apprentice training program. See Quincy, Mass., Code § 15.26.010(C). Incorporating the state's standards imposes a raft of stringent conditions on would-be bidders including, among

-10-

others, documentation of the program's terms and conditions, see 453 Mass. Code Regs. 7.03(8)(b); the location of the program's apprentice activities, see id. 7.03(8)(e); training and instruction, see id. 7.04(1)(b)(1)-(4); wage rates, see id. 7.04(1)(b)(5); recordkeeping, see id. 7.04(1)(b)(23), 7.13; instructor qualifications, see id. 7.04(2); apprentice enrollment, see id. 7.07(1); reporting, see id. 7.07(2); and termination, see id. 7.08(3). For good measure (or bad measure depending on one's point of view), the Ordinance separately requires a defined graduation rate. See Quincy, Mass., Code § 15.26.010(C).

With such a compendium of stipulations in place, we have no difficulty concluding that the Ordinance goes far beyond simply influencing ERISA apprentice training programs. It mandates an employee benefit structure and specifies how that structure must be administered. This is simply too intrusive to withstand ERISA preemption.

The City balks. It asserts that even if its Ordinance constitutes a mandate, that should not be the end of the matter. In support, it suggests that "[t]he key distinction is between a statute that mandates or effectively mandates an aspect of law with which ERISA is concerned . . . and a statute that does not." Assoc'd Builders & Contrs. v. Mich. Dep't of Labor & Econ. Growth, 543 F.3d 275, 280 (6th Cir. 2008). ERISA is a statute concerned

with funding, its thesis runs, and local regulation of apprentice training standards is too remote to warrant ERISA preemption.

This assertion is true as far as it goes, but it does not take the City very far. ERISA "has more than one purpose." Simas v. Quaker Fabric Corp., 6 F.3d 849, 856 (1st Cir. 1993). In addition to funding concerns, "[t]he uniformity of regulation gained by employers under ERISA was assuredly part of the legislative balancing of interests and trade-offs." Id.

The Ordinance plainly disturbs that balance. Let us offer an example. Although the Ordinance requires the graduation of at least one apprentice within the previous twelve months, see Quincy, Mass., Code § 15.26.010(C), Fall River's counterpart ordinance required the graduation of at least two apprentices per year for the three years prior to a bid, see Util. Contrs. Ass'n, 2011 WL 4710875, at *7. Accordingly, compliance with the City's formula would not effect compliance with Fall River's; and so the Ordinance would "requir[e] the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142 (1990). Such a result would be "fundamentally at odds with the goal of uniformity that Congress sought to implement" through the enactment of ERISA. Id.

There is yet another reason why the City's argument does not work. The Dillingham Court, while finding no preemption there,

-12-

was careful to distinguish situations in which an "apprenticeship program is required by [state] law to meet [the state's] standards." 519 U.S. at 332. The Ordinance trips this snare: it not only mandates the standards that apprentice training programs must follow but also mandates that employers actually have such programs in place as a condition of bidding. This dual mandate goes too far: not even "discharging all of its apprentices will release an employer or a program from the reach" of the Ordinance. Assoc'd Builders, 543 F.3d at 282. Because the Ordinance unqualifiedly demands the maintenance of a specific type of apprentice training program as a condition of bidding, it exceeds the boundaries of what ERISA allows. See Minn. Chapter of Assoc'd Builders & Contrs., Inc. v. Minn. Dep't of Pub. Safety, 267 F.3d 807, 818 (8th Cir. 2001).

In an effort to change the trajectory of the debate, the City seeks to wrap itself in the mantle of the Court's statement that "an employee benefit program not funded through a separate fund is not an ERISA plan." Dillingham, 519 U.S. at 326 (emphasis in original). Such a plan can be used to comply with the Ordinance and, in the City's view, the availability of this non-ERISA avenue to compliance ought to pretermit a finding that the Ordinance relates to ERISA plans.

This is anfractuous reasoning. "[W]hether a State requires an existing plan to pay certain benefits, or whether it

-13-

requires the establishment of a separate plan where none existed before, the problem is the same."  Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 13 (1987).  A plan administrator put to such a choice is still "[f]aced with the difficulty or impossibility of structuring administrative practices according to a set of uniform guidelines."  Id.

The lesson of Fort Halifax is pertinent here.  To comply with the Ordinance, an employer with an ERISA-governed apprentice training program either would have to modify that program to provide apprentices on Quincy-based projects with special benefits or would have to establish and coordinate a separate plan into which such apprentices would be funneled.  Either way, the employer's hope of uniform administration would be dashed by the Ordinance's demands.  Such balkanization of benefit administration is exactly the sort of outcome ERISA was designed to prevent.  The upshot is to defenestrate the City's insistence that we attach decretory significance to an employer's ability to comply with the Ordinance by means of a non-ERISA plan.  See Minn. Chapter of Assoc'd Builders, 267 F.3d at 817; cf. Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 150-51 (2001) (holding that an ability to opt out of a state law does not save the law from preemption).

The decision in Golden Gate Restaurant Ass'n v. City & County of San Francisco, 546 F.3d 639 (9th Cir. 2008), loudly bruited by the City, is not to the contrary.  There, the Ninth

Circuit held that requiring a certain level of health-care expenditures — which might, but need not, be spent through an ERISA plan — did not trigger ERISA preemption. See id. at 646, 661. But the court did not purpose to lay down a blanket rule that whenever compliance can come through a non-ERISA option, ERISA preemption is unavailable. Instead, the court recognized that state laws that "required employers to have [benefit] plans, and . . . dictated the specific benefits employers were to provide through those plans" would be preempted. Id. at 655.

The City next contends that the Fitzgerald Act, 29 U.S.C. § 50, somehow aids its cause. That contention is fruitless. While the Fitzgerald Act "recognized pre-existing state efforts in regulating apprenticeship programs," Dillingham, 519 U.S. at 330, nothing in that statute indicates a congressional intention to sanction local efforts to mandate state-approved apprentice training programs.

Looking for comfort in any quarter, the City proposes an analogy to the Supreme Court's statement that a state "may force the employer to choose between providing disability benefits in a separately administered plan and including the state-mandated benefits in its ERISA plan." Shaw, 463 U.S. at 108. That pronouncement has no traction here: it is anchored in a statutory exemption from ERISA for plans "maintained solely for the purpose of complying with . . . disability insurance laws." 29 U.S.C.

-15-

§ 1003(b)(3). No comparable exemption anchors the City's proposed analogy.

Scraping the bottom of the barrel, the City asseverates that in passing the Ordinance, it merely acted as a participant in the market for construction services. This role, it says, immunizes its actions from ERISA preemption. See Cardinal Towing & Auto Repair, Inc. v. City of Bedford, 180 F.3d 686, 691 (5th Cir. 1999) (holding that "when a state or municipality acts as a participant in the market and does so in a narrow and focused manner consistent with the behavior of other market participants, such action does not constitute regulation subject to preemption"); see also Reeves, Inc. v. Stake, 447 U.S. 429, 436 (1980) (drawing distinction "between States as market participants and States as market regulators" for Commerce Clause purposes).

This asseveration stalls before it starts. The City failed to raise this issue in its summary judgment papers and, "[i]f any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal." Teamsters Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992). The market participation theory is, therefore, not properly before us.[3]

---

[3] To be sure, the City protests that its market participation theory surfaced during the preliminary injunction proceedings. But "[t]he district court was under no obligation to rummage through

-16-

We summarize succinctly. ERISA specifically includes apprentice training programs in its definition of employee welfare benefit plans. A state-law mandate regarding the structure or administration of such plans falls within the ambit of ERISA's preemption provision. The Ordinance comprises such a mandate because it dictates the establishment of an employee benefit structure and sets the standards governing that structure. Even though a non-ERISA option might be available for compliance with the Ordinance, the availability of such an option does not save the Ordinance: its mandate still has the effect of destroying the benefit of uniform administration that is among ERISA's principal goals.

That ends this aspect of the matter. We conclude that ERISA preempts the Ordinance and affirm the district court's grant of summary judgment.

## B.  Attorneys' Fees.

This leaves the issue of attorneys' fees. After entering summary judgment, the district court, responding to the plaintiffs' motion, awarded the plaintiffs attorneys' fees totaling $81,007.85 under ERISA's fee-shifting provision, 29 U.S.C. § 1132(g)(1), and

---

[the City's] preliminary injunction filings" when contemplating summary judgment. CMM Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1526 (1st Cir. 1996). The dispositive circumstance is that the City failed, directly or indirectly, to advance a market participation defense in response to the summary judgment motion. See id.

the Fees Act, 42 U.S.C. § 1988.  The City conceded below that a portion of this award ($20,725) corresponded to the plaintiffs' successful efforts in striking the residency requirement from the Ordinance and, thus, was properly awarded under 42 U.S.C. § 1988.[4] However, the district court did not make such a differentiation; rather, it awarded a global amount that covered both work done in attacking the residency requirement and work done in attacking the apprentice training requirement.  See Merit III, 2013 WL 3984596, at *2-3.  While the district court indicated that both 42 U.S.C. § 1988 and 29 U.S.C. § 1132(g)(1) were in play, it did not break down the fee award along those lines.  See id.

ERISA's fee-shifting provision permits a district court to "allow a reasonable attorney's fee and costs of action" for an "action under this subchapter . . . by a participant, beneficiary, or fiduciary."  29 U.S.C. § 1132(g)(1).  The City contends that the district court lacked authority to make any fee award under this provision.  Its objections are twofold.  First, it asserts that the plaintiffs' action was not an "action under this subchapter." Second, it asserts that no plaintiff qualifies as a "participant, beneficiary, or fiduciary" of an ERISA plan as that phrase is used in the fee-shifting statute.

_____

[4] The plaintiffs have not agreed that their fees for work in connection with the residency requirement are limited to this amount.  That issue remains open for exploration on remand.  See text infra.

-18-

Here, too, a procedural obstacle looms. The City advanced these objections for the first time in its motion for reconsideration of the fee award. To succeed on such a motion, "the movant must demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law." Calderón-Serra v. Wilmington Trust Co., 715 F.3d 14, 20 (1st Cir. 2013) (internal quotation mark omitted). We review the denial of such a motion for abuse of discretion. See id.

This obstacle is formidable — but it is not insurmountable. Although a district court has substantial discretion in evaluating a motion for reconsideration, "substantial discretion is not unbridled discretion." Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 528 (1st Cir. 1991). As here, a manifest error of law may outstrip the boundaries of even that wide discretion. See, e.g., Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 678-79 (3d Cir. 1999); Edward Gray Corp. v. Nat'l Union Fire Ins. Co., 94 F.3d 363, 367-69 (7th Cir. 1996). As we explain below, we think that this is the unusual case in which the error was so manifest that the motion for reconsideration should have been granted.

With respect to the City's first point — whether a preemption challenge qualifies as an "action" for the purposes of 29 U.S.C. § 1132(g)(1) — the district court acknowledged that the

-19-

question is "close."  Merit IV, 2013 WL 4446935, at *2.[5]  This is an accurate characterization, but we do not need to pursue the question: regardless of whether this case qualifies as the type of "action" necessary to engage the gears of ERISA's fee-shifting provision, we cannot discern an appropriate "participant, beneficiary, or fiduciary" to whom fees could lawfully be awarded.

As both the plaintiffs and the district court concede, the only possibility is plaintiff Ross.  But there is a rub: Ross is not a participant, beneficiary, or fiduciary of any ERISA apprentice training program.

Ross's standing as an eligible "participant" relies instead upon his status as a participant in his employer's 401(k) plan — a plan that is wholly unrelated to the contested apprentice training requirement.  Such reliance depends, in turn, upon reading the ERISA fee-shifting statute in the broadest possible sense.  On that virtually limitless view, the "participant, beneficiary, or fiduciary" described in the statute need not have any nexus to a relevant ERISA plan: any ERISA plan will do.

---

[5] The district court speculated that the action might be viewed as one to "enforce" ERISA's preemption provision. Merit IV, 2013 WL 4446935, at *2.  This speculation is puzzling in light of the district court's earlier holding (in the Fall River case) that the preemption challenge was not "an action or [a] request [for] relief under the civil enforcement section of ERISA."  Util. Contrs. Ass'n, 2011 WL 4710875, at *3; see Richard H. Fallon, Jr. et al., Hart and Wechsler's The Federal Courts and the Federal System 712 (6th ed. 2009) (stating that preemption challenges to state law are routinely allowed "without express statutory authorization").

We are confident that the text of the statute is not elastic enough to allow so expansive an interpretation. The plaintiffs offer no case law or legislative history for the extraordinary proposition that Congress intended participation in a single (unrelated) ERISA plan to confer an unfettered right to collect attorneys' fees in any ERISA action. This lack of authority is unsurprising: under the so-called American rule, litigants are generally responsible for the remuneration of their own lawyers. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975). Fee-shifting statutes depart from this norm and, thus, must be strictly construed. See MR Crescent City, LLC v. Draper (In re Crescent City Estates, LLC), 588 F.3d 822, 826 (4th Cir. 2009). The plaintiffs' proposed interpretation of 29 U.S.C. § 1132(g)(1) contravenes these tenets. As such, Ross's participation in an unrelated 401(k) plan is manifestly insufficient to ground an award of fees in this case.

As a fallback, the plaintiffs urge us to affirm the full fee award under the Fees Act, 42 U.S.C. § 1988. This statute authorizes a court to award attorneys' fees to "the prevailing party" in an action to enforce a discrete set of civil rights statutes. Although ERISA is not one of those civil rights statutes, the plaintiffs say that the issue of ERISA preemption is bound up with their victory regarding the Ordinance's residency requirement — and the fees related to preemption of the apprentice

training requirement should follow suit. Cf. Wagenmann v. Adams, 829 F.2d 196, 225 (1st Cir. 1987) (holding that "an award of fees for time spent on all aspects" of the case was proper under section 1988 where the non-civil rights claims "were sufficiently interconnected with the [civil rights] claims").

The district court explicitly declined to consider this argument because it premised its fee award in significant part on the ERISA fee-shifting provision. See Merit III, 2013 WL 3984596, at *2. Since the court awarded the full amount that the plaintiffs requested, it did not need to (and did not) articulate what portion of the award was attributable to that provision and what portion was attributable to section 1988. See id. at *2-3.

We are cognizant that the trial judge's "intimate knowledge of the nuances of the underlying case uniquely positions [her] to construct a condign award." Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 292 (1st Cir. 2001). With this prudential principle in mind, we think it appropriate here to allow the district court to consider, in the first instance, whether any fees beyond the $20,725 conceded by the City are awardable under 42 U.S.C. § 1988(b) and, if so, in what amount. Accordingly, we set aside the fee award and remand to the district court for further consideration.

**III. CONCLUSION**

We need go no further.  For the reasons elucidated above, we affirm the district court's grant of summary judgment, but reverse the fee award and remand to the district court for further proceedings consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.  No costs.**