RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0004p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ALLIED CONSTRUCTION INDUSTRIES,

*Plaintiff-Appellee,*

*v.*

CITY OF CINCINNATI,

*Defendant-Appellant* (16-4248),

LABORERS INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 265,

*Intervenor-Appellant* (16-4249).

Nos. 16-4248/4249

---

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:14-cv-00450—Michael R. Barrett, District Judge.

Argued: October 11, 2017

Decided and Filed: January 4, 2018

Before: BOGGS, BATCHELDER, and KETHLEDGE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Terrance A. Nestor, CITY OF CINCINNATI, Cincinnati, Ohio, for Appellant in 16-4248. David M. Cook, COOK & LOGOTHETIS, LLC, Cincinnati, Ohio, for Appellant in 16-4249. Kevin R. McDermott, BARNES & THORNBURG LLP, Columbus, Ohio, for Appellee. **ON BRIEF:** Terrance A. Nestor, Scott Crowley, CITY OF CINCINNATI, Cincinnati, Ohio, for Appellant in 16-4248. David M. Cook, COOK & LOGOTHETIS, LLC, Cincinnati, Ohio, Sharon Seidenstein, Jolene Kramer, WEINBERG, ROGER & ROSENFELD, PC, Alameda, California, James Ray, LAW OFFICES OF JAMES RAY, Alexandria, Virginia, for Appellant in 16-4249. Kevin R. McDermott, BARNES & THORNBURG LLP, Columbus, Ohio, for Appellee.

————————————

**OPINION**

————————————

BOGGS, Circuit Judge.    The City of Cincinnati ("City") and Laborers International Union of North America, Local 265 ("the Union") appeal the district court's grant of summary judgment to Allied Construction Industries ("Allied Construction"), and the denial of the City's and the Union's motions for summary judgment.    The district court held that three City ordinance provisions ("the Ordinance") concerning bidder specifications for certain City projects were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA").    We hold that the City was acting as a market participant in enacting the Ordinance, and therefore these provisions are not preempted by ERISA.    Accordingly, we reverse.

**I**

**A.  Factual Background**

On June 26, 2012, Cincinnati enacted Ordinance No. 282-2012, which codified Chapter 320 of the Municipal Code to provide guidelines for selecting the "lowest and best bidder" on certain projects of the "Department of Sewers."    Cincinnati, OH., Ordinance No. 282-2012 (June 26, 2012).    The Ordinance's preamble noted that it was enacted, in part, to "ensure efficient use of taxpayer dollars, minimize waste, and promote worker safety and fair treatment of workers." *Id.*    On May 1, 2013, the City enacted Ordinance No. 114-2013, amending the Ordinance to include bids for "Greater Cincinnati Water Works and the stormwater management utility division."    Cincinnati, OH., Ordinance No. 114-2013 (May 1, 2013).    The City stated that it sought to employ skilled contractors that were committed to the City's "safety, quality, time, and budgetary concerns." *Id.*    Allied Construction alleges that three provisions in the Ordinance are preempted by ERISA.

First, § 320-3 lists fifteen factors to be considered in selecting the lowest and best bidder, two of which are at issue here. Section 320-3(j) requires the bidder to certify *whether*:

> it provides, or contributes to, a health care plan for those employees working on
> the project and shall provide a copy of the health plan upon request.    The

contributions toward a health care plan must be part of the employee's regular compensation, and not merely part of the employee's compensation during the period of time for which the employee is performing work on the project.

Cincinnati, OH., Code § 320-3(j) (2013).

Section 320-3(k) requires the bidder to certify *whether*:

it contributes to an employee pension or retirement program, including, but not limited to, a 401K, a defined benefit plan, or similar plan, for its field employees working on the project and shall provide a copy of the plan upon request. The contributions toward a pension or retirement program must be a part of the employee's regular compensation, and not merely part of the employee's compensation during the period of time for which the employee is performing work on the project.

*Id.* § 320-3(k).

Second, § 320-5 imposes an apprenticeship standard, requiring each bidder to certify that "[f]or the duration of the project, the bidder will maintain or participate in an apprenticeship program for the primary apprenticeable occupation on the project," and that that apprenticeship program must have graduated at least one apprentice for each of the past five years. *Id.* § 320-5. The preamble to the amended Ordinance notes that the apprenticeship standard serves to remedy a "projected shortfall of trained workers for work to be performed on behalf of [the City] . . . between 2014 and 2020." Cincinnati, OH., Ordinance No. 114-2013 (May 1, 2013). Allied Construction asserts that the only apprenticeship program that meets the Ordinance's apprenticeship requirement is the Union's apprenticeship program, which is not available to non-Union contractors. As a result, Allied Construction argues that non-Union contractors cannot feasibly satisfy the Ordinance's bidding requirements.

Third, § 320-7 requires the winning contractor to pay $.10 per hour per worker into a pre-apprenticeship training fund, managed by the City. Cincinnati, OH., Code § 320-7 (2013). These payments "shall not be taken from the fringe benefits of the contractor's employees." *Id.*

**B. Procedural Background**

On May 30, 2014, Allied Construction filed suit against the City on behalf of its non-Union members who were not selected as the winning bidder on certain City projects, and sought

a temporary restraining order and an injunction halting the use of the Ordinance in selecting bidders. The Union was granted leave to intervene on behalf of the City. After discovery, Allied Construction, the Union, and the City each moved for summary judgment. The district court granted Allied Construction's motion for summary judgment, denying both the Union's and the City's motions. The district court held that the City was not acting as a market participant when it enacted the Ordinance, and that ERISA preempted the disputed provisions of the Ordinance. The Union and the City appeal.

## II

We review de novo the district court's rulings on summary-judgment motions, drawing our own "inferences and legal conclusions from the record." *Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 289 (6th Cir. 1999). Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under its preemption provision, ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a) (2012). Under ERISA, the term "State law" "includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." *Id.* § 1144(c)(1). The term "State" includes "any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter." *Id.* § 1144(c)(2). Allied Construction argues that assessing whether contractors provide health-care and retirement benefits to their employees, and requiring contractors to participate in an apprenticeship program, relate to ERISA's employee-benefit plans.

The City and the Union argue that the Ordinance cannot be preempted by ERISA because the City was acting as a market participant, rather than as a regulator, by codifying in the Ordinance its preferences for bidders. While the Sixth Circuit has yet to explicitly apply the market-participant doctrine to ERISA preemption, other circuits have done so. Moreover, the Sixth Circuit has applied the market-participant doctrine in cases involving National Labor Relations Act preemption, 29 U.S.C. §§ 151–169 (2012) ("NLRA"), and Federal Aviation

Administration Authorization Act preemption, 49 U.S.C. § 14501 (2012) ("FAAAA"). Because the rationale of the market-participant doctrine applies with equal force to ERISA as it does to the NLRA and the FAAAA, we now hold that the market-participant doctrine applies to ERISA. We also join the Ninth Circuit in using the Fifth Circuit's *Cardinal Towing* framework to assess whether a municipality was acting as a market participant in enacting an ordinance.

## A. Applying the Market-Participant Doctrine to ERISA

In *Bldg. & Constr. Trades Council of the Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218 (1993) ("*Boston Harbor*"), the Supreme Court analyzed whether a state agency's bidding specifications for selecting contractors for the state-funded clean-up of the Boston Harbor was subject to either *Garmon*[1] or *Machinists*[2] preemption under the NLRA. The bidding specification required the winning bidder to abide by the terms of a labor agreement reached between a state agency and a construction-management company. *Id.* at 221–22. The Court held that the bidding specification was not preempted by the NLRA because the state acted as a *proprietor* rather than a regulator in imposing the requirement. *Id.* at 227. The Court explained that "[w]hen a State owns and manages property . . . it must interact with private participants in the marketplace. In so doing, the State is not subject to pre-emption by the NLRA, because pre-emption doctrines apply only to state *regulation*." *Ibid.* A government entity acts as a regulator when "it performs a role that is characteristically a governmental rather than a private role . . . ." *Id*. at 229. Thus, because "a private purchaser may choose a contractor based upon that contractor's willingness to enter into a prehire agreement, a public entity *as purchaser* should be permitted to do the same." *Id.* at 231. The Court emphasized that the contractors who did not wish to entertain a state's demands have a choice to either "alter their usual mode of operation to secure the business opportunity at hand, or seek business from purchasers whose perceived needs [do not include those requirements]."

---

[1]*San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244 (1959) (forbidding state and local regulation of activities that are protected by § 7 of the NLRA or constitute an unfair labor practice under § 8).

[2]*Machinists v. Wis. Emp't Relations Comm'n*, 427 U.S. 132, 147 (1976) (prohibiting state and municipal regulation of areas "left 'to be controlled by the free play of economic force'").

*Id.* Just as a private purchaser can seek certain concessions from a contractor, so too can a state or municipality.

Here, the City argues that the market-participant doctrine outlined in *Boston Harbor* should be applied to ERISA. The Ninth Circuit has applied the market-participant doctrine to ERISA, and the Third Circuit has suggested that the doctrine applies, though it has not explicitly held so. *See Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1023–24 (9th Cir. 2010); *Associated Builders & Contractors Inc. N.J. Chapter v. City of Jersey City*, 836 F.3d 412, 417 (3d Cir. 2016) (noting that the court "assume[s]" that the market-participant doctrine applies to ERISA).

While the Sixth Circuit has applied *Boston Harbor*'s market-participant doctrine in preemption cases involving the NLRA, *see Mich. Bldg. & Constr. Trades Council v. Snyder*, 729 F.3d 572, 579 (6th Cir. 2013), and the FAAAA, *see Petrey v. City of Toledo*, 246 F.3d 548, 555 (6th Cir. 2001), *abrogated on other grounds by City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424 (2002), we have not yet considered whether the market-participant doctrine applies to ERISA preemption.

We do so now. Where a state or municipality acts as a proprietor rather than a regulator, it is not subject to ERISA preemption. *See Petrey*, 246 F.3d at 555 (noting that other courts have applied the market-participant doctrine to ERISA cases and finding "no good reason" to limit its application). We next turn to the question of assessing whether particular municipal conduct qualifies as market participation.

## B. The *Cardinal Towing* Framework

In order to qualify under the market-participant doctrine, the challenged municipal conduct must be proprietary, rather than regulatory. To be sure, "the line between regulatory and proprietary conduct has soft edges." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 133 S. Ct. 2096, 2103 (2013). In *Cardinal Towing & Auto Repair, Inc. v. City of Bedford*, 180 F.3d 686 (5th Cir. 1999), the Fifth Circuit created a two-step framework to assess whether a municipality's conduct qualified as market participation, in the context of FAAAA preemption.

First, does the challenged action essentially reflect the entity's own interest in its efficient procurement of needed goods and services, as measured by comparison with the typical behavior of private parties in similar circumstances? Second, does the narrow scope of the challenged action defeat an inference that its primary goal was to encourage a general policy rather than address a specific proprietary problem?

*Id.* at 693.

In *Cardinal Towing*, the city of Bedford, Texas solicited bids from towing companies to be the exclusive provider of all towing requests made by the local police. *Id.* at 689. The city required each bidder to guarantee a towing response time of fifteen minutes and have access to a particular type of towing vehicle. *Ibid.* The Fifth Circuit concluded that the towing-contract specifications "had an obvious connection to the City's narrow proprietary interest in its own efficient procurement of services," and thus were not subject to preemption. *Id.* at 693. The bid specifications "looked only to the bidder's dealings *with the City*," and did not specify that the tow companies provide a certain type of towing vehicle for non-city tows. *Id.* at 694. There was "no indication that [the city] was trying to generally encourage the possession of [a certain type of towing vehicle]." *Id.* at 693.

The Ninth Circuit has adopted the two-step *Cardinal Towing* framework, *see Johnson*, 623 F.3d at 1023–24 (9th Cir. 2010), and the Second and Third Circuits have cited *Cardinal Towing* to describe their own market-participant analysis. *See e.g.*, *Bldg. Industry Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 189–90 (2d Cir. 2012); *Hotel Emps. & Rest. Emps. Union, Local 57 v. Sage Hosp. Resources, LLC*, 390 F.3d 206, 215–16 (3d Cir. 2004). The Fifth Circuit did not indicate whether it would use *Cardinal Towing*'s framework disjunctively or conjunctively. The Ninth Circuit has applied *Cardinal Towing*'s two steps disjunctively, as two alternate methods, either of which is sufficient to demonstrate non-regulatory market participation. *Johnson*, 623 F.3d at 1024; *but see Sage Hosp.*, 390 F.3d at 216 (suggesting that the municipality must satisfy both steps of *Cardinal Towing* in order to be proprietary, in a Third Circuit opinion).

While we have not previously expressly adopted *Cardinal Towing*'s framework, we have cited it with approval in *Petrey*, 246 F.3d at 556–58. We now adopt *Cardinal Towing*'s two-step

market-participant framework, and join the Ninth Circuit in treating its two parts disjunctively. Thus, if, at step one, the Ordinance essentially reflects the City's own interest in the efficient procurement of goods and services, as compared to the typical behavior of private parties, we infer that the conduct was proprietary rather than regulatory, and qualifies for the market-participant doctrine. If, instead, the challenged conduct does not essentially reflect the City's own interest in efficient procurement, we would move to step two and consider whether the Ordinance's narrow scope nonetheless defeats the inference that the conduct was regulatory.

### C. Applying *Cardinal Towing* to the Ordinance

#### 1. Step One of Cardinal Towing

Next, we turn to applying the *Cardinal Towing* framework to the Ordinance. The first step of *Cardinal Towing* asks whether the challenged action reflects the City's own interest in its efficient procurement of goods and services, as measured by comparison with the typical behavior of private parties in similar circumstances. However, as other circuits have recognized, the goal of "efficient procurement" does not restrict a state or municipality to selecting the cheapest possible bidder. To the contrary, "just as private entities serve their purposes by taking into account factors other than price in their procurement decision," so too can a municipality. *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031, 1046 (9th Cir. 2007).

Here, the Ordinance imposes requirements for bidders on certain City projects. Section 320-3(j)–(k) requires bidders to certify whether they contribute to their employees' health care and retirement funds, and §§ 320-5 and 320-7 require each bidder to participate in an eligible apprenticeship program and to contribute to a pre-apprenticeship training fund. The City submitted evidence that many private parties utilize criteria similar to those that the City used in the Ordinance. For instance, some private owners impose project standards by contracting with companies under union agreements, requiring certain standards for labor safety, training, and wages. In his report submitted in this case, Dr. Dale Belman, a professor at Michigan State University, explained,

> [p]rivate sector owners who undertake construction projects for their own use are
> concerned with factors beyond the bid price for a project. This reflects a purpose
> of minimizing the long term costs of a construction project where quality,

timeliness, safety and predictability are as important as bid price in determining the capital and operating costs of a construction project. In adopting the ordinance, the [City] acted in a manner similar to other large owners who are building for their own purposes.

Specifically as to the City's preference to hire contractors who provide health care and retirement benefits, embodied in § 320-3(j)–(k), a municipality might reasonably conclude that a contractor who provides these benefits is less likely to experience significant employee turnover, improving the stability and overall quality of a project. This is consistent with the City's stated goal to find contractors who are committed to the City's "safety, quality, time, and budgetary concerns." Cincinnati, OH., Ordinance No. 114-2013 (May 1, 2013). Moreover, the apprenticeship requirements in §§ 320-5 and 320-7 are connected to the City's reasonable concern over a possible shortfall of trained workers who would be available for City projects in the future. *See id.* (noting that "there is a projected shortfall of trained workers for work to be performed on behalf of [the City] between 2014 and 2020"). The City has a strong proprietary interest in developing a skilled workforce for its many future projects.

Allied Construction argues that the effect of the Ordinance is to "rig" the bidding system against non-union contractors. Perhaps this is so. But, "[t]hat a state or local governmental entity may have policy goals that it seeks to further through its participation in the market does not preclude the [market-participant] doctrine's application, so long as the action in question is the state's own market participation." *Engine Mfrs. Ass'n*, 498 F.3d at 1046.

For instance, in *Boston Harbor*, the Court held that a bidding specification that required the winning contractor to abide by a labor agreement that included "union recognition, compulsory union dues or equivalents, and mandatory use of union hiring halls, prior to the hiring of any employees" was not preempted by the NLRA because the state agency was acting as a market participant. *Boston Harbor*, 507 U.S. at 230. While requiring bidders to abide by a labor agreement clearly discouraged non-union contractors and may not have resulted in the cheapest possible project price, the state's conduct was shielded from preemption under the market-participant doctrine. The Court noted that the bidding specifications provided contractors who were normally opposed to labor agreements with the same choice they would have had if dealing with a private purchaser: "[t]hey may alter their usual mode of operation to secure the

business opportunity at hand, or seek business from purchasers whose perceived needs do not include a project labor agreement." *Id.* at 231.

Allied Construction acknowledges that the City, as a contracting entity, "may negotiate *any* contractual terms it wishes, through a [project labor agreement], with any contractor it wishes." Yet Allied Construction argues that the inclusion of these project demands in a bidding ordinance, rather than through individual piecemeal agreements, transforms the action from proprietary to regulatory.

For the purposes of the market-participant doctrine, this is a distinction without a difference. *See Snyder*, 729 F.3d at 578 (rejecting a similar argument and noting that a state, as a proprietor, is not limited to acting on a case-by-case basis). Regardless of whether the preference is embodied in a bidding ordinance or an after-bid agreement, the City is acting as would a private party by seeking a contractor that meets certain specifications, aimed towards the efficient procurement of its own goods and services.[3] Just as in *Boston Harbor*, contractors opposed to these Ordinance specifications have a choice: they may alter their usual mode of operation or seek business elsewhere by declining to bid on these particular City projects.

This does not foreclose the possibility that some forms of municipal conduct could be considered regulatory, rather than proprietary, even when the municipality has entered the marketplace. However, as long as the state or municipality's bidding requirements can reasonably be said to reflect its interests in efficient procurement, as measured by comparison to the actions of private parties, the first step of *Cardinal Towing* is satisfied.

Here, the benefit-certification requirements in § 320-3(j)–(k) and the apprenticeship requirements in §§ 320-5 and 320-7 reflect the City's interests in the efficient procurement of goods and services. Thus, the City satisfied the first part of *Cardinal Towing*, and therefore, the City was acting as a market participant in enacting the Ordinance. As a result, the Ordinance is not subject to ERISA preemption.

---

[3]In *Merit Constr. All. v. City of Quincy*, 759 F.3d 122, 131 (1st Cir. 2014), the First Circuit considered a similar ordinance, which required that bidders on city projects participate in an apprentice-training program. However, the parties failed to raise the market-participant doctrine argument in their summary-judgment motions, so the court declined to analyze the issue.

*2. Step Two of* Cardinal Towing

Because the Ordinance reflected the City's interests in the efficient procurement of goods and services in step one of *Cardinal Towing*, we infer that the Ordinance is primarily proprietary. Thus, the second step of *Cardinal Towing*—which asks whether, in any event, the scope of the Ordinance is sufficiently narrow to defeat the inference that the Ordinance is regulatory—is not triggered. However, for the sake of clarifying our newly adopted framework, we will briefly explain the step-two analysis, had the Ordinance failed step one of *Cardinal Towing*.

To be sure, the Ordinance's scope is broader than the ordinance at issue in *Cardinal Towing*, where the city merely required that a certain type of tow truck be available for city jobs, without regard for what type of tow truck the company used on non-city jobs. *Cardinal Towing*, 180 F.3d at 689. Here, the Ordinance considers whether bidders provide health-care and pension contributions as "part of the employee's regular compensation, and not merely part of the employee's compensation during the period of time for which the employee is performing work on the project," as factors in selecting the winning bidder. *See* Cincinnati, OH., Code § 320-3(j)–(k) (2013). Thus, the Ordinance assesses bidders partially based on their compensation practices on non-City projects. Of course, the Ordinance only imposes this consideration on a select group of contractors: those contractors that affirmatively choose to bid on City projects. One district court that has considered this issue has held that the mere fact that the municipal ordinance applies only to contractors who affirmatively choose to bid on city projects dictates that the ordinance is "sufficiently tailored" to the municipality's proprietary interests. *See Associated Builders & Contractors, Inc. v. New Castle County*, 144 F. Supp. 3d 633, 639 (D. Del. 2015) (holding that an ordinance requiring bidders on county projects to participate in an apprenticeship program was "sufficiently tailored" to the county's proprietary interest because it only applied to bidders on the county's projects). As discussed above, we decline to resolve the narrow-tailoring inquiry at step two because step one of *Cardinal Towing* established that the City was acting as a proprietor, rather than a regulator.

The City was acting as a market participant in enacting the Ordinance, and thus, the Ordinance is not subject to ERISA preemption.

**IV**

For the foregoing reasons, we REVERSE the district court's grant of summary judgment for Allied Construction, and direct the district court to enter judgment in favor of the City of Cincinnati.